UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. H-20-651 |
| § | |
| CHRISTENE BOWIE § | |

### PLEA AGREEMENT

The United States of America, by and through Jennifer B. Lowery, United States Attorney for the Southern District of Texas and Jill Jenkins Stotts, Assistant United States Attorney, CHRISTENE BOWIE, defendant and the defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1. The defendant agrees to plead guilty to Count One of the Superseding Indictment. Count One charges the Defendant with Aiding and Abetting Interference with Commerce by Robbery in violation of Title 18, United States Code, §§ 1951(a) and 2. The defendant, by entering this plea agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Superseding Indictment or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for the violation of Title 18, United States Code, Sections 1951(a) and 2 is imprisonment for up to 20 years and a fine of not more than $250,000.

1

Additionally, the defendant may receive a term of supervised release after imprisonment of up to 3 years. *See* Title 18, United States Code, §§ 3559(a) and 3583(b). Defendant acknowledges and understands that if she should violate the conditions of any period of supervised release which may be imposed as part of her sentence, then defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. Title 18, United States Code, §§ 3559(a) and 3583(e)(3). Defendant understands that she cannot have the imposition or execution of the sentence suspended, nor is she eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Defendant understands that if she is not a citizen of the United States, by pleading guilty she may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, not oppose the forfeiture of assets contemplated in this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to Interference with Commerce by Robbery and related offenses. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

> (a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;
>
> (b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;
>
> (c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)     Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)     Defendant agrees to provide to the United States all documents in her possession or under her control relating to all areas of inquiry and investigation; and

(f)     Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw her plea.

### Waiver of Appeal and Collateral Review

7.  Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.  Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255.  In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks her conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of this waiver.

8.  In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.  Defendant is also aware that any estimate of the possible sentencing

range under the sentencing guidelines that she may have received from her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 125 S. Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

10. The United States agrees to each of the following:

(a) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States may move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

(b) The Government agrees to dismiss the remaining counts of the superseding indictment at the time of sentencing.

(c) The Government agrees that if the Defendant provides substantial assistance, as defined herein, the Government will file a motion for a reduction of the defendant's sentence under 5K1.1

### Agreement Binding - Southern District of Texas Only

11. The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Superseding Indictment. This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney. The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

### United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines. Specifically, the United States reserves the right:

   (a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

   (b) to set forth or dispute sentencing factors or facts material to sentencing;

   (c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

   (d) to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and Title 18, United States Code, § 3553(a); and

   (e) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

13. Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines, which are only advisory, as well as the provisions of Title 18, United States Code, § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which

Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court, and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

## Rights at Trial

14. Defendant represents to the Court that she is satisfied that her attorney has rendered effective assistance. Defendant understands that by entering into this Agreement, she surrenders certain rights as provided in this Plea Agreement. Defendant understands that those rights include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree;

> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on her own behalf. If the witnesses for Defendant would not appear voluntarily, she could require their attendance through the subpoena power of the court; and

> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, she could testify on her own behalf.

**Factual Basis for Guilty Plea**

15.     Defendant is pleading guilty because she <u>is</u> guilty of the charges contained in Count One of the superseding indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

On November 10, 2020, a Brinks Armored Truck was robbed in the Pink's Pizza parking lot located at 2726 Bissonnet Street, Houston, Texas and within the Southern District of Texas. At the location, Officer Bruzas spoke with the driver and courier of the armored truck – Christene BOWIE (driver) and Jose RODRIGUEZ (courier). RODRIGUEZ stated that he and BOWIE were on an ATM Route and had just finished a stop at a Frost Bank on Westheimer where they refilled the ATMs. RODRIGUEZ stated as they left, BOWIE suggested they stop and get pizza for dinner. RODRIGUEZ agreed and stated BOWIE picked the pizza place – Pink's Pizza on Bissonnet. RODRIGUEZ stated she called and ordered the pizza and then drove them off route to the location. Upon arriving at the location, RODRIGUEZ stated BOWIE specifically drove around to the side of the building and parked near a dumpster. BOWIE stated she wanted to park in the back so they could have some "privacy." Upon parking, BOWIE gave RODRIGUEZ her debit card and told him to go inside to pay for and get the pizza. RODRIGUEZ stated as he walked into the restaurant, he noticed a black Cadillac CTS parked near them, but he did not take note of whether it was occupied or not. RODRIGUEZ stated he picked up the pizza and returned to the armored truck.

As RODRIGUEZ approached the truck, he stated BOWIE opened the door for him to enter with the pizza. RODRIGUEZ stated as soon as the door opened and he began to enter the truck, he was tackled from behind into the truck. RODRIGUEZ stated he was tased on the groin and rolled to the side to see what was going on. RODRIGUEZ stated he then observed an unknown male subject, later identified as Cedric COLBERT, wearing an Allied Universal Security jacket standing over him. RODRIGUEZ stated he was tased again in the groin and felt in fear for his life and safety. RODRIGUEZ stated he put his hands up and said, "Take what you want, just please don't hurt us!" RODRIGUEZ stated COLBERT then grabbed his wrists and placed handcuffs on him. RODRIGUEZ stated a second unknown male subject later identified as Glenn ADAMS then entered the truck and began to collect bags of cash from the back of the truck. RODRIGUEZ stated while ADAMS collected cash, COLBERT tased him in the groin again. RODRIGUEZ stated neither COLBERT or ADAMS acknowledged BOWIE, who was sitting in the driver's seat of the truck behind him – she was not handcuffed or tased. RODRIGUEZ stated both COLBERT and ADAMS then fled the location. RODRIGUEZ did not observe a vehicle or direction of travel, but noted the black Cadillac CTS was no longer there following the robbery. Brinks conducted an audit of the truck and determined $566,368 in U.S. Currency had been taken by the UNSUBS.

Sgt David HELMS spoke with employees at Pink's Pizza who stated they had noted the Cadillac CTS to have been parked in the parking lot for approximately one hour prior to the robbery. Det. Bruzas and Sgt HELMS found several things about the robbery to seem suspicious and to indicate possible inside involvement.

9

On November 17, 2020, BOWIE agreed to come to the FBI Houston Office to discuss her involvement in the armored truck robbery. BOWIE stated she began a relationship with a male she knew as Cedric COLBERT on October 24, 2020. BOWIE stated COLBERT knew she was a Brinks employee and on the Saturday prior to the robbery, she and COLBERT went to a bar. BOWIE stated she had too much to drink and COLBERT mentioned interest in robbing her armored truck. BOWIE stated COLBERT explained that he didn't "get his hands dirty," but had other friends who would rob the truck. COLBERT told BOWIE they had done this before. BOWIE stated she explained to COLBERT that she was driver and did not handle the money, so they could not rob her. BOWIE stated the next day, she again met up with COLBERT. BOWIE stated they parted ways and she went home. After arriving at home, she stated COLBERT came to her house with an unknown black male, later identified as ADAMS. BOWIE stated COLBERT informed her they were going to rob her armored truck. BOWIE stated they showed her videos of her and other Brinks employees on route that they had recorded while scouting. They told her they were going to rob her truck and asked to use her gun. BOWIE stated she refused to give them her gun. BOWIE stated they then told her they would use handcuffs and a taser and tase her. BOWIE stated she refused to be tased.

BOWIE stated on the day of the robbery, she received a text message from COLBERT telling her to go to Pink's Pizza that evening for dinner and that the robbery would occur there. BOWIE stated she then convinced RODRIGUEZ to eat Pink's Pizza for dinner and drove to that location. BOWIE stated COLBERT told her they were parked near a dumpster. BOWIE stated the robbery then occurred at Pink's Pizza once they parked. BOWIE stated she did not receive a cut of the money and only participated in fear that COLBERT or ADAMS

would harm her or her family. Det. Bruzas identified COLBERT and further found he was the registered owner of a black Cadillac CTS.

On December 1, 2020, TFO Bickford received the call detail records associated with COLBERT'S two numbers. Bickford found that both of those phones appear around Pink's Pizza at approximately 6pm and remain in the area until approximately 6:45pm, which is the approximate time of the robbery. Further analysis found that in the call logs of COLBERT'S phone were received incoming calls from BOWIE'S friend Garonisha, who is the girl that BOWIE stated she had three way call COLBERT prior to the robbery.

BOWIE identified ADAMS as the second robber of the Brinks truck. A photo of ADAMS was shown to BOWIE and she positively identified him as the guy who had come to her house with COLBERT and the person who was involved in the robbery. Cell phone analysis was done and shows that the phone belonging to ADAMS was the Pink's Pizza at the time of the robbery of the armored car. ADAMS eventually confessed to his role in the robbery of the Brinks armored car.

The robbery of Brinks affects, obstructs and delays interstate commerce and the movement of commodities in commerce.

**Breach of Plea Agreement**

16.   If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand. If at any time defendant retains, conceals or disposes of assets in violation of this plea agreement, or if defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United

States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines

17. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that she will make a full and complete disclosure of all assets over which she exercises direct or indirect control, or in which she has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which she has an interest, unless Defendant obtains the prior written permission of the United States.

18. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents

necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of her assets to deliver all funds and records of such assets to the United States.

20. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Fines

21. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

22. This written Plea Agreement, including the attached addendum of Defendant and her attorney, constitutes the complete Plea Agreement between the United States, Defendant, and her counsel. No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement. Defendant acknowledges that no threats have been made against him and that she is pleading guilty freely and voluntarily because he is guilty

23. Any modification of this Plea Agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on April 29, 2022.

*Christene Bowie*
Christene Bowie
Defendant

Subscribed and sworn to before me on April 29, 2022.

NATHAN OSCHNER, Clerk
UNITED STATES DISTRICT CLERK

By: *Melissa Morgan*
Deputy United States District Clerk

APPROVED:

JENNIFER B. LOWERY
UNITED STATES ATTORNEY

By: *Jill Jenkins Stotts*
Jill Jenkins Stotts
Assistant United States Attorney
Southern District of Texas
Telephone: (713) 567-9000

*Dennis Hester*
Dennis Hester
Attorney for Defendant

## PLEA AGREEMENT - ADDENDUM

I have fully explained to defendant her rights with respect to the pending Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> and <u>Policy Statements</u> and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     4/29/22
Dennis Hester                                           Date
Attorney for Defendant

## PLEA AGREEMENT - ADDENDUM

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____   4-29-22
Christene Bowie                Date
Defendant